**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LINE VREVEN | : |
| | : |
|     **Plaintiff,** | : |
| | : |
| vs. | : |
| | :   Case No. 1:08-CV-01099-PLF |
| AARP | : |
| | : |
|     **Defendant.** | : |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT I OF THE COMPLAINT**

In its Motion to Dismiss, the defendant AARP argues that plaintiff Line Vreven has failed to allege sufficient facts to support her claim in Count I of the Complaint of wrongful discharge in violation of public policy. The defendant also suggests that Count I fails because it does not identify any "clearly-expressed public policy" that was violated by AARP when it discharged Vreven for complaining about its scheme to misuse its tax exempt status. As discussed below, both of Defendant AARP's assertions are without merit.

We will be brief, because the matter is so very clear. Vreven must only plead a short and plain statement of the facts underlying her claim, which she has done. And, Vreven's allegation that AARP terminated her because of her objection to AARP's abuse of its tax status constitutes the type of public policy exception to the at-will employment doctrine which is recognized in the District of Columbia. Plainly, AARP's motion to dismiss should be denied.

**Legal Standard**

The Federal Rules of Civil Procedure require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). The Rules "do

not require a claimant to set out in detail the facts upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).  The complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.*  Moreover, "the complaint is construed liberally in the plaintiffs' favor, and [courts] grant plaintiffs the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Comm. Corp.*, 305 U.S. App. D.C. 60, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citations omitted).

## Argument

The Defendant disingenuously contends that the Plaintiff has failed to identify any "clearly-expressed public policy" that was violated by her discharge.  However, nowhere in its memorandum in support of its Motion to Dismiss does the Defendant refer to paragraph 15 of the Complaint, in full:

> AARP terminated Vreven's employment because she objected to AARP's abuse of its structure and tax-exempt status resulting in AARP's evasion and avoidance of taxes pursuant to the Internal Revenue Code.

Complaint at ¶ 15.

Certainly, there can be fewer public policies that are more familiar or more clearly-expressed that the requirement to pay taxes properly due, and not to avoid them through abuses of a tax exempt status, as described in 26 U.S.C. § 501(c) and the implementing Internal Revenue Code regulations at 26 C.F.R. § 1.501(c).[1]  It is a matter of public record that defendant AARP claims that it qualifies for favorable tax treatment under § 501(c)(4) of the Internal Revenue Code.  *FEC v. Beaumont*, 539 U.S. 146, 160 (U.S. 2003) (recognizing AARP's claimed

---

[1] It is well settled that "plaintiff does not need to cite the statute or regulation that he believes embodies a clear mandate of public policy in his complaint" to survive a motion to dismiss.  *MacIntosh v. Bldg. Owners & Managers Ass'n Int'l*, 355 F. Supp. 2d 223, 229 (D.D.C. 2005).

2

status, citing AARP's website). Under 501(c)(4):

> (4) (A) Civic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare, or local associations of employees, the membership of which is limited to the employees of a designated person or persons in a particular municipality, and the net earnings of which are devoted exclusively to charitable, educational, or recreational purposes.
> (B) Subparagraph (A) shall not apply to an entity unless no part of the net earnings of such entity inures to the benefit of any private shareholder or individual.

26 USC § 501(c)(4). Thus, to qualify for a § 501(c)(4) tax exemption, the statute and Internal Revenue Service regulations thereunder provide that there:

> must be (1) an organization, that (2) is not operated for profit, and that is (3) operated exclusively for the promotion of social welfare. *See* 26 U.S.C. § 501(c)(4); 26 C.F.R. § 1.501(c)(4)-1. Such an organization does not operate exclusively for the promotion of social welfare if it "is carrying on business with the general public in a manner similar to organizations which are operated for profit." 26 C.F.R. § 1.501(c)(4)-1(a)(2)(ii).

*United States v. George*, 448 F.3d 96, 100 (1st Cir. Mass. 2006).

In *Church By Mail, Inc. v. Commissioner*, T.C. Memo 1984-349, *aff'd* 765 F.2d 1387 (9th Cir. 1985), for example, the Tax Court found that a church was operated with a purpose of providing a market for an advertising and mailing company owned by the same people who controlled the church. The church argued that the contracts between the two were reasonable, but the Court of Appeals pointed out that "the critical inquiry is not whether particular contractual payments to a related for-profit organization are reasonable or excessive, but instead whether the entire enterprise is carried on in such a manner that the for-profit organization benefits substantially from the operation of the Church." *Id.,* 765 F.2d at 1392. These are the very types of practices about which Vreven complained, and which caused AARP to oust her.

AARP also suggests that Count I fails because it does not identify a violation of any

"District of Columbia" public policy.  Nothing in the case law, however, requires that the public policy exception to the at-will doctrine is restricted to District of Columbia statutory law. *Accord Carl v. Children's Hospital*, 702 A.2d 159, 162 (D.C.App. 1997) (Terry; Ferren; Schwelb; Mack concurring) ("the recognition of any such exception must be firmly anchored either in the Constitution or in a statute or regulation which clearly reflects the particular 'public policy' being relied upon.")  As the Court stated in *Carl:*

> the "very narrow exception" created in *Adams* should not be read in a manner that makes it impossible to recognize any additional public policy exceptions to the at-will doctrine that may warrant recognition. We think Judge Schwelb, in his concurring opinion in *Gray v. Citizens Bank,* read *Adams* correctly: "We could not and did not hold in *Adams* that this was the *only* public policy exception, because that question was simply not presented." *Gray, supra, 602 A.2d at 1098* (Schwelb, J., concurring). *Adams* simply said that there is "*a* very narrow exception to the at-will doctrine," *597 A.2d at 34* (emphasis added), not "just one and only one" such exception.

*Id.* at 160.

Indeed, there can be no doubt that the policies expressed in Internal Revenue Code are the type of public policies contemplated by the District of Columbia Court of Appeals in *Carl*. As this Court itself has said in the past in addressing the very same section of the Internal Revenue Code at issue here (albeit a different subparagraph of the provision) and finding that it expresses a public policy which removes a matter from the at-will doctrine under *Carl*:

> . . . there is a clear mandate of public policy against the subsidization of private political activity by the taxpayers in this case, as recognized by both parties, that is solidly based on section 501(c)(3) and 20 C.F.R. § 638.814.  *See* 26 U.S.C. § 501(c)(3); 20 C.F.R. § 638.814; Pl.'s Opp'n at 27-28; HBI Reply at 20; *see also, e.g., Cammarano v. United States*, 358 U.S. 498, 512, 3 L. Ed. 2d 462, 79 S. Ct. 524 (1959) (reviewing history of limitations of the congressional policy against an exemption for organizations that attempt to promote or defeat legislation and stating that "these limitations, carried over into the 1939 and 1954 Codes, made explicit the conclusion derived by Judge Learned Hand in 1930 that 'political agitation as such is outside the statute, however innocent the aim ….

4

> Controversies of that sort must be conducted without public subvention; the Treasury stands aside from them'"); *Regan v. Taxation With Representation of Washington*, 461 U.S. 540, 550, 76 L. Ed. 2d 129, 103 S. Ct. 1997 (1983) (noting congressional concern that section 501(c)(3) organizations might use tax-deductible contributions to lobby to promote the private interests of their members*); Haswell v. United States*, 205 Ct. Cl. 421, 500 F.2d 1133, 1140 (Ct. Cl. 1974) ("The limitations in sections 501(c)(3) and 170(c)(2) of the 1954 Code stem from the policy that the United States Treasury should be neutral in political affairs and that substantial activities directed to attempts to influence legislation should not be subsidized."). The Court therefore concludes that the policy of protecting against abuse of the public treasury by utilizing its funds for partisan activity is a sufficiently clear mandate of public policy for the purposes of *Carl*.

*Riggs v. Home Builders Inst.*, 203 F. Supp. 2d 1, 21 (D.D.C. 2002).

AARP also argues that Vreven has failed to plead "any specific factual allegations whatsoever…" This contention is completely untrue. *See* Complaint, ¶s 10, 11, 15 and 16. Moreover, AARP misconstrues the requirement of the Federal Rules. Rule 8(a)(2) requires only "a short and plain statement"; it does not require detailed facts. *See Conley v. Gibson, supra.* Clearly, Ms. Vreven has alleged facts sufficient to support her wrongful termination claim.

Indeed, Vreven's allegations here are analogous to those in *Washington v. Guest Services, Inc.*, 718 A.2d 1071 (D.C.App. 1998). In that case, the plaintiff was a food service worker in a retirement home. *Id.* at 1072. She objected to preparing food in an area where cleaning chemicals were being used and expressed concerns that the chemicals would contaminate the food. *Id.* She was subsequently dismissed "for protesting safety, health, and food code violations on the part of the Defendant." *Id.* at 1073. The Court of Appeals held that the plaintiff in *Washington* had stated a valid wrongful termination claim:

> Ms. Washington has alleged, under oath, that she was discharged for attempting to persuade her fellow worker (and, ultimately, her employer) not to violate this officially declared public policy and for protesting an alleged unsafe and unlawful practice. To permit an employee to be fired for such actions would undermine the purposes of the food and health regulations and would frustrate the public policy

of which these regulations are an expression.

*Id.* at 1080.

Here, as in *Washington*, plaintiff Vreven alleges that AARP terminated Vreven's employment because she "objected to AARP's abuse of its structure and tax-exempt status resulting in AARP's evasion and avoidance of taxes pursuant to the Internal Revenue Code." Complaint at ¶15. No more needs to be pleaded.

Indeed, in *Riggs v. Home Builders Inst., supra,* the Court rejected the very assertions made here by AARP in its Rule 12(b)(6) motion, and approved the very arguments made here by Vreven. In that case, an employee claimed he was terminated as a result of his resistance to practices which would have caused his employer to violate its status under § 501 of the Internal Revenue Code  The employer moved to dismiss, making *inter alia* the very arguments made here by AARP: that the facts underlying the discharge were insufficiently articulated in the complaint. The court rejected the employer's, and hence AARP's, position:

> . . . the Court must read Riggs's complaint, for the current purposes of Rule 12(b)(6), in light of the liberal standard of Rule 8. *See, e.g., Atchinson v. District of Columbia,* 315 U.S. App. D.C. 318, 73 F.3d 418, 421 (D.C. Cir. 1996). As the Court of Appeals for this Circuit has explained, Rule 8(a)(2) requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). According to Rule 8(e), "each averment of a pleading shall be simple, concise, and direct. No technical forms of pleadings or motions are required." Rule 8(f) instructs courts to construe "all pleadings … to do substantive justice." Under the Federal Rules, the purpose of pleading is simply to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," not to state in detail the facts underlying a complaint. *Conley v. Gibson*, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957*); see Sinclair v. Kleindienst*, 229 U.S. App. D.C. 13, 711 F.2d 291, 293 (D.C. Cir. 1983). The Federal Rules establish a regime in which "simplified" pleadings provide notice of the nature of claims, allowing parties later "to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues" through "the liberal opportunity for discovery and other pretrial procedures established by the Rules." *Conley*, 355

U.S. at 47-48 & n. 9. A complaint, in other words, need not allege all that a plaintiff must eventually prove. *Atchinson,* 73 F.3d at 421-22. While it is true that the Court does not have to "accept legal conclusions cast in the form of factual allegations," *Kowal v. MCI Communications Corp.*, 305 U.S. App. D.C. 60, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286, 92 L. Ed. 2d 209, 106 S. Ct. 2932 (1986)), it is equally true that Riggs's complaint "need not allege all that [he] must eventually prove," *Atchinson*, 73 F.3d at 422, to survive HBI's motion. As stated above, dismissal is warranted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45-46; *see Hishon v. King & Spalding*, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984) ("A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.").

Under these liberal pleading standards, the Court cannot find beyond a doubt that Riggs will be able to "prove no set of facts in support of his [Adams] claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46. While Riggs's alleged unlawful political activity examples of attending political receptions and conventions and participating in NAHB meetings and a party convention are too broad to ultimately substantiate a violation of section 501(c)(3), it is not inconceivable that Riggs may be able to show with the requisite specificity through the development of the record that HBI asked him to attend the Republic National Convention, for example, to "contact[] … members of a legislative body for the purpose of proposing, supporting, or opposing legislation," 26 C.F.R. § 1.501(c)(3)-1(c)(3)(ii), to "advocate[] the adoption or rejection of legislation," id., or to "participate in, or intervene in (including the publishing or distributing of statements),  any political campaign on behalf of (or in opposition to) any candidate for public office," 26 U.S.C. § 501(c)(3). Such a showing would evidence a violation of section 501(c)(3). Riggs may be able to similarly bear out additional facts necessary to support his other allegations, including the defendants' expectation of his participation in weekly NAHB leadership discussions of NAHB's "political and legislative agenda," Compl.  P 17, and in NAHB's Palm Harbor leadership session, which focused on endorsing a presidential candidate, "forming an election fund raising vehicle," and pressuring elected officials to support legislation, *id.* P 18. In other words, the primary fault with Riggs's complaint at this point in time is the breadth of its allegations; it does not specify precisely how the alleged activities violate section 501(c)(3) under the relevant regulations. Without significant factual development by Riggs, explaining in greater detail how the examples he has provided constitute violations of section 501(c)(3) under the interpretations discussed above, Riggs ultimately will be unable to sustain his wrongful discharge claim against HBI pursuant to Adams. Yet while Riggs's allegations are over broad, they do not, for example, contradict the necessary facts he must ultimately establish, *see, e.g., Henthorn v. Dep't of Navy*, 308 U.S. App. D.C. 36, 29 F.3d 682, 687 (D.C. Cir.

> 1994), and the Court cannot find that Riggs is incapable of proving a set of facts in support of his *Adams* claim that would entitle him to relief, *Conley*, 355 U.S. at 45-46. Thus, the Court concludes that under the liberal pleading regime of Rule 8, dismissal would be inappropriate at this time, despite the fact that Riggs's complaint falls short of alleging all the facts that he will eventually have to prove to establish violations of section 501(c)(3) as a predicate for fitting into the Adams exception to the at-will doctrine. *See Atchinson*, 73 F.3d at 421-22.

*Riggs v. Home Builders Inst.*, 203 F. Supp. 2d 1, 14 (D.D.C. 2002).

As in *Riggs*, Vreven's allegations comply with the "liberal pleading regime of Rule 8" and it is plain that her allegation that AARP terminated her because of her refusal to cooperate in AARP's violations of its 501(c) status states a good cause of action. Nothing more is required in a Complaint.

## Conclusion

For the foregoing reasons, AARP's Motion to Dismiss Count I of the Complaint should be denied.

Respectfully submitted,

_____s/_____
Edward J. Tolchin
DC Bar #297556
Fettmann, Tolchin & Majors, P.C.
10509 Judicial Drive, Suite 300
Fairfax, Virginia 22030
(703) 385-9500
(703) 385-9893 (facsimile)
etolchin@ftm-pc.com
Counsel for Plaintiff

**Certificate of Service**

    I hereby certify that on this 2nd day of September 2008, a true copy of the foregoing Memorandum in Opposition to Defendant's Motion to Dismiss Count I of the Complaint was served, via electronic mail and first class mail, postage prepaid, on: Frank C. Morris, Jr., Epstein Becker & Green, P.C., 1227 25th Street, NW, Suite 700, Washington, DC, 20037-1156, counsel for Defendant.

                                               ____s/_____
                                               Edward J. Tolchin